**In re Mary Jo TOWNSEND, Debtor.**

**Mary Jo Townsend, Plaintiff,**

v.

**Morequity, Inc., Defendant.**

**Bankruptcy No. 01–26777.**
**Adversary No. 01–2362.**

United States Bankruptcy Court,
W.D. Pennsylvania.

April 29, 2004.

Mary Bower Sheats, Pittsburgh, PA, for Debtor.

Charles F. Perego, Pittsburgh, PA, for Morequity, Inc.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

Debtor has objected to the claim and secured status of Morequity, Inc., contending that her signature on the mortgage was forged. The issue before the court is whether the handwriting analysis testimony of Thelma Greco is admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), with respect to the signature on Debtor's mortgage. If Debtor signed the document, then Debtor is liable to Morequity and Morequity's claim will be allowed.

Mary Jo Townsend (Debtor) and her parents owned a home located in Monroeville, Pennsylvania, in which she and her husband lived with her children. Debtor's husband applied to borrow $81,723.68 in order to refinance the existing mortgage loan and to put the home in the name of the Debtor and her husband only, to pay certain taxes, and to finance an addition to

---

**1.** This Memorandum Opinion constitutes our findings of fact and conclusions of law. The court's jurisdiction was not at issue.

the house. Both Debtor and her husband appeared at the closing and signed and acknowledged all documents that were necessary. Debtor filed a Complaint to Determine Secured Status, Adv. No. 01–2362, seeking to have the mortgage with Morequity, Inc., avoided as unperfected and unsecured on the basis that her signature on the mortgage is a forgery. Debtor also objected to Morequity's claim, asserting that it should be disallowed "because the claim is unperfected due to the forgery of [Debtor's] signature." Objection to Claim Filed by Morequity, Inc., Bankr. Dkt. No. 47, at ¶ 4.

Debtor offered the expert testimony of Thelma Greco to prove that Debtor's husband forged her signature to receive the loan. Ms. Greco purports to be a forensic documents examiner whose education[2] in the field consists of a certificate from the Andrew Bradley Course, obtained in 1994.[3] She also took a course in 1999 offered through the National Association of Document Examiners ("NADE"). She testified that she had been "asked to be qualified as an expert witness" on two occasions, Transcript of May 28, 2003 (hereafter "Tr. 5/28/03"), Dkt. No. 117, at 14. When asked if she had ever been appointed by a court, she testified that she had "always been privately engaged." *Id.* at 17. Ms. Greco testified that she started doing document analysis as a professional in 1991, before completing the Bradley Course, and that she has examined hundreds of documents for authenticity since 1992. Although she initially testified that she is "certified" as a forensic document examiner, it was established at trial that she is not yet a candidate for board certification by NADE. Tr. 5/28/03 at 11–12, 21–22, 38.[4] This court permitted Ms. Greco to testify subject to consideration of the weight to be given her testimony or its being stricken in the event she does not qualify as an expert. We find that she does not so qualify and we therefore strike her testimony.

Ms. Greco first examined unique characteristics of the questioned handwriting to determine whether Debtor's signature was a forgery. In addition, she employed the "cross check" system which involves placing a dot above each letter to determine top and bottom letter pattern, slant pattern and space pattern. *Id.* at 46–47. According to Ms. Greco, the cross check system is a way to validate the conclusion reached through examination of unique characteristics. *Id.* at 47. By using this method, Ms. Greco came to the conclusion that the Debtor's signature on the mortgage was a forgery.

Morequity, Inc.'s (Morequity) position is that Ms. Greco's testimony should not be admissible for two reasons:

first because she does not possess the requisite qualifications of a questioned document examiner to offer an opinion as to the genuineness of Debtor's signature on the mortgage; and secondly, on

---

**2.** Ms. Greco also has a Master's degree in education.

**3.** Ms. Greco first testified that she completed the course in 1992, Transcript of May 28, 2003, Dkt. No. 117, at 11, but it was established at trial that she did not complete the Bradley Course until 1994. *Id.* at 18.

**4.** There was additional testimony by Ms. Greco that there are no national standards for "question forensic document examiners". Tr. 5/28/03 at 40. However, there are at least two professional organizations in existence to which she does not belong. One is the American Academy of Forensic Science, the report of a committee of which was the basis for the American Society for Testing and Materials' ("ASTM") Standard Terminology for Expressing Conclusions of Forensic Documents Examiners. *Id.* at 40–41. She admitted that she was not aware of the national ASTM standard but opined that it was not necessary to meet it. *Id.* at 42.

the basis that the methodology she employed for evaluating the questioned document was flawed and has not been accepted by her peers in the questioned document community.

Brief in Support of Motion to Strike Expert Testimony (hereafter "Defendant's Brief"), Adv. Dkt. No. 31, at 2. Morequity claims that Ms. Greco does not have the requisite qualifications because her certificate from the "Bradley Course" states that she has the "knowledge and ability to conduct basic document examination ... and to create a foundation for qualification as an expert in this field." Defendant's Brief, Adv. Dkt. No. 31, at 3 (emphasis omitted). This is the only education she has completed in the field, although she is in the process of completing other courses.[5]

Morequity argues that Ms. Greco's experience is extremely "thin" because she has been involved in only two court cases, and testified in only one of those cases, in the Orphan's Court Division of the Court of Common Pleas of Allegheny County. In addition, her involvement in the first case took place before she obtained her certificate from the Bradley Course. Tr. 5/28/03 at 19. Morequity also points out that Ms. Greco has never been accepted as an expert in federal court.

Morequity's expert witness, J. Wright Leonard, sits on the board of directors of the National Association of Document Examiners, and is certified by that organization as well as by the American Board of Forensic Examiners. Ms. Leonard was accepted as an expert at the hearing on May 28, 2003. Ms. Leonard testified that she had never heard of Ms. Greco's "cross check" system prior to this case. Tr. 5/28/03 at 151. She further stated that doing a slant pattern or top and bottom of

the letter analysis would not always give accurate information because the spacing within words can vary. *Id.* at 153. She testified that because of the confined space within which the questioned signature was made, the method used by Ms. Greco would not have been of value in that the top or bottom of the letter pattern method used by Ms. Greco would not be useful because the tops and bottoms of the letters could be different from the writer's standard. Ms. Greco testified that although she had many samples of Debtor's handwriting, she did not perform a "dots and ... line spacing" analysis with respect to samples in which the signature was in a confined space. *Id.* at 94.

Ms. Greco testified that in applying her method of analysis she used transparent paper using it to draw lines in relation to the top and bottom of the letters. *Id.* at 51. Ms. Leonard testified that although performing slant stroke analysis is not of great value except in rare instances, glass grid plates with slant lines of various angles should be used as well as protractors and certain types of rulers. *Id.* at 161–62. Using the grid provides uniform results. Ms. Leonard testified that if Ms. Greco drew the lines herself using transparent paper and then measured, it would not be an acceptable method of measuring a slant. *Id.* at 162.

## DISCUSSION

■ We find that under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Ms. Greco's testimony is inadmissible and will be stricken. "*Daubert* holds that expert testimony is admissible under Rule 702 of the Federal

---

**5.** Ms. Greco has published but not in the field of forensic document examination. *See* Tr.5/28/03 at 28.

Rules of Evidence only if 'the reasoning or methodology underlying the testimony is scientifically valid and...that reasoning or methodology properly can be applied to the facts in issue.'" *In re Armstrong World Industries, Inc.*, 285 B.R. 864, 870 (Bankr.D.Del.2002), quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court in *In re Armstrong World Industries* noted that in *Daubert* the U.S. Supreme Court set forth a non-exclusive list of four factors and that the U.S. Court of Appeals for the Third Circuit expanded the list to eight. Those factors include:

(1) whether a method consists of a testable hypothesis;

(2) whether the method has been subject to peer review;

(3) the known or potential rate of error;

(4) the existence and maintenance of standards controlling the technique's operation;

(5) whether the method is generally accepted;

(6) the relationship of the technique to methods which have been established to be reliable;

(7) the qualifications of the expert witness testifying based on the methodology; and

(8) the non-judicial uses to which the method has been put.

*In re Armstrong World Industries, Inc.*, 285 B.R. at 870, quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 n. 8 (3d Cir.1994).[6]

### Daubert Factors

■ There is no evidence of record concerning all the factors mentioned above. We will discuss those that clearly apply.

### Factor Number 2

According to Ms. Greco's testimony, none of her methodologies have been subjected to peer review. Ms. Greco stated that she used the "cross check" system to determine whether or not the Debtor's signature was forged. Ms. Leonard testified that she had never heard of the "cross check" system prior to reviewing Ms. Greco's report and that this system had never been presented to her during her training or course work. Tr. 5/28/03 at 153. Ms. Leonard also testified that "doing a slant pattern" or a "top and bottom of the letter analysis and a slant pattern" will not always give accurate information and, because of the confined space allowed for signature on the document in question, such an analysis would prove of little value. *Id.* at 153–54. *See supra.* We find

6. The court in *Paoli* states:

We listed very similar factors a district court should consider in *[United States v.] Downing*, [753 F.2d 1224 (3d Cir.1985)]. *See Downing*, 753 F.2d at 1238–39. *Daubert* lists two factors not listed in *Downing*—whether a method produces testable hypotheses and the existence of standards controlling the technique's operation, and *Daubert* leaves off its list several factors listed in *Downing*—the degree to which the expert testifying is qualified, the relationship of a technique to "more established modes of scientific analysis," and the "nonjudicial uses to which the scientific technique are put." *Downing*, 753 F.2d at 1238–39; *see Daubert*, 509 U.S. at 591–95, 113 S.Ct. at 2796–97. But *Daubert* specifically refuses to disavow any of the particular factors we listed in *Downing*. *See Daubert*, 509 U.S. 579, 113 S.Ct. at 2797 n. 12. And *Daubert*, like *Downing*, indicates that the inquiry as to whether a particular scientific technique or method is reliable is a flexible one. *See id.* at 591–93, 113 S.Ct. at 2796, *Downing*, 753 F.2d at 1238–39. We now make clear that a district court should take into account all of the factors listed by either *Daubert* or *Downing* as well as any others that are relevant.

*In re Paoli R.R. Yard PCB Litigation*, 35 F.3d at 742. (Footnote omitted.)

Ms. Leonard's testimony credible and conclude that the methods employed by Ms. Greco were insufficient to complete a reliable analysis. Further, because there has been no peer review, there is no evidence regarding Factors 1, 3, 5, or 8.

*Factor Number 5*

Ms. Greco testified that she analyzed the slant pattern of the letters on the documents that she reviewed. Tr. 5/28/03 at 48. According to Edna Robertson, whom Ms. Greco cites as an expert in this field, *id.* at 81,[7] this is a recognized method of examination. However, Ms. Leonard's testimony, which we accept, is that the methodology used by Ms. Greco was flawed because the test requires that graph paper, among other things, be used as a constant with the sample as an overlay and that analysis of the slant of the handwriting is not of great value except in rare instances. *Id.* at 161–62. Ms. Greco did not use any of the appropriate tools or paper or plates in her work. Thus, even if the slant method had been subject to peer review, Ms. Greco did not follow its dictates. We accept Ms. Leonard's testimony in this regard.

*Factor Number 7*

Ms. Greco's qualifications include a certificate from the Bradley Course received in 1994. As noted above, the certificate establishes that she demonstrated the ability to conduct basic document examination and to "*create a foundation* for qualification as an expert in this field." Tr. 5/28/03 at 18 (emphasis added). Therefore, she only possesses the foundation of a qualification as an expert, not the actual qualifications. She has not completed the NADE certification course and has limited experience with respect to forgeries.

Ms. Greco's prior experience includes only two court cases, one of which occurred before she completed the Bradley Course. She testified in only one of them and neither was a federal court case. Tr. 5/28/03 at 19. *See also id.* at 33–34; Defendant's Brief, Adv. Dkt. No. 31, at 3. She admitted that she has not completed her apprenticeship and is not a candidate for board certification with NADE. Tr. 5/28/03 at 20–22. Ms. Greco testified that her only prior experience in document examination before taking the Bradley Course was with "graphoanalysis" which concerns the study of character traits and has nothing to do with handwriting analysis of the type at issue in this case. Tr. 5/28/03 at 15–16.

On the other hand, Ms. Leonard testified that she was an apprentice for several years under the guidance of a internationally recognized expert and consultant. Tr. 5/28/03 at 110–11. Her specialty is handwriting identification and she is certified as a question documents examiner by the National Association of Document Examiners and the American Board of Forensic Examiners. *Id.* at 111. She belongs to various professional organizations, is on the board of directors of the National Association of Document Examiners, is on the editorial staff of the Forensic Journal Board. *Id.* at 112. She engages in continuing education, lectures in her field and has published articles. *Id.* at 112–13. She has been accepted in approximately 72 court cases as an expert on the issue of question documents examination since 1983. *Id.* at 113. She further testified that out of 75 to 90 cases per year, she is called to testify in approximately 10 to 12 cases.[8] *Id.* at 114.

---

**7.** Edna Robertson is the author of a book entitled *Fundamentals of Document Examination.* Tr. 5/28/03 at 81.

**8.** In a "slow year" that number drops to between three and five cases. Tr. 5/28/03 at 114.

Based on the foregoing, we find that Ms. Greco is not qualified to give expert testimony in the field of forensic or question document analysis. We also find that her methodology does not meet the *Daubert* test as it is not reliable and is not a generally accepted method of performing handwriting analysis. *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra,* 509 U.S. at 594, 113 S.Ct. at 2797. Accordingly, it is inadmissible and, therefore, will be stricken from the record.

Even if Ms. Greco had the necessary qualifications and if her methods had been subjected to peer review and Ms. Greco had correctly employed the slant analysis procedure, we would give no weight to her testimony and would credit Ms. Leonard's. Ms. Leonard's training and experience outweigh Ms. Greco's. Further, Ms. Leonard's conclusions are consistent with the credible non-expert witness evidence in the case. We find that Debtor did, in fact, sign the questioned document.